WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,      )
                               )
              Plaintiff,       )
                               )
         v.                    )     CIV 03-2345 PHX VAM
                               )
$493,850.00 in U.S. Currency and)    O R D E R
One 1993 Ford F350 Truck,      )
                               )
              Defendants,      )
                               )
Roy Bruno and Miguel Camacho,  )
                               )
              Claimants.   )
_____)

A.   PROCEDURAL HISTORY

On November 26, 2003, plaintiff filed this forfeiture action.
The Complaint alleges that the currency is subject to forfeiture
because it represents money furnished or intended to be furnished
by any person in exchange for a controlled substance.  21 U.S.C.
§ 881(a)(1)(A) and (B). (Doc. 1 at p. 1).  The Complaint also
alleges the currency is subject to forfeiture as it was involved
in a transaction or attempted transaction in violation of 18
U.S.C. §§ 1956 or 1957.  (Id.)  The Complaint alleges the vehicle
was used and intended to be used to transport and facilitate the
transportation, sale, receipt, possession and concealment of a
controlled substance in violation of 21 U.S.C. § 801, et seq.
(Id. at p. 2.)  Claimants Bruno and Camacho filed a Judicial Claim

1  on December 22, 2003.  Claimant Bruno alleges he is the owner and
2  possessor of the currency and claimant Camacho the owner and
3  possessor of the vehicle.  (Doc. 4).  Claimants also filed an
4  Answer on that same date.  (Doc. 5).  The parties consented to
5  proceed before a Magistrate Judge to trial and judgment.  (Doc.
6  6).  On April 27, 2004, a new claim was filed.  The only
7  difference between the new claim and the old claim is that the new
8  claim is signed by the claimants themselves rather than their
9  attorney.  (Doc. 23).

10      On September 2, 2004, the Court granted a Motion to Suppress
11  filed by claimants.  (Doc. 27).  In the Order, the Court
12  suppressed ". . .the evidence gained after Officer McFarland
13  determined there was no impairment of the driver, handed him a
14  warning and told him he was free to go. . ."  (Id. at pp. 13-14).

15      In the Order granting the Motion to Suppress, the Court
16  denied Cross Motions for Summary Judgment.  (Doc. 27).  In its
17  Motion for Summary Judgment, plaintiff challenged claimants'
18  standing.  The Court ruled, on the information available at that
19  time, the claimants had standing.[1]  (Doc. 27 at p. 16).  The Court
20  pointed out that the granting of the Motion to Suppress did not
21  result in automatic summary judgment for claimants so long as the
22  Government could prove the forfeiture through untainted evidence.

23
24  [1]Claimants have the burden of proving standing at each stage of this proceeding.  At summary judgment, claimants have the burden of showing there is a genuine issue of material fact.  United
25  States v. $57,790.00, 263 F.Supp.2d 1239, 1241-2 (S.D.Cal. 2003)(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561
26  (1992).  Claimant Bruno filed a claim under penalty of perjury stating the money is his.  The admissions indicate the money is
27  Camacho's.

28                                      2

<u>United States v. Real Property Known as 22249 Dolorosa Street</u>, 167 F.3d 509, 513 (9th Cir. 1999).  (Doc. 27 at p. 16).  In support of its summary judgment, plaintiff argued that claimants refusal to answer discovery requests, by claiming the Fifth Amendment privilege, automatically resulted in admissions which would support forfeiture.  Plaintiff sent each of the claimants a series of requests for admissions.  Rather than respond to the requests for admissions, claimants' attorney sent a letter indicating they would be invoking the Fifth Amendment to all discovery requests. Plaintiff took the position that Rule 36, F.R.Civ.P., automatically resulted in admissions.  The Court pointed out that Rule 36(a), F.R.Civ.P., leaves it to the Court as to whether or not the answers or objections in response to requests for admissions are sufficient and, whether the matter should be deemed admitted or an amended answer be required.  (Doc. 27 at p. 18). The Court denied the Cross Motions for Summary Judgment indicating it was unclear whether the Government had untainted evidence which would support forfeiture.  (Doc. 27 at p. 19).

Shortly after this Order, claimants and plaintiff again filed Cross Motions for Summary Judgment.  (Docs. 28-31).  Claimants filed a Motion to Compel Disclosure.  (Doc. 38).  In response, the Government filed a Motion to Stay the Proceedings pursuant to 18 U.S.C. § 981(g)(1) and 21 U.S.C. § 881(i).  (Doc. 39).  The Government also filed a Motion to Reargue the Suppression Issue based on a new Supreme Court ruling.  (Doc. 43).  All these Motions were set for oral argument.  In the interim, the Court granted the Motion to Stay until further Order of the Court.

3

(Doc. 47).

At the argument on the Motions for Summary Judgment, the Court denied the Cross Motions for Summary Judgment and denied without prejudice claimants' Motion to Compel Disclosure and Strike All Post-Deadline Information.  (Doc. 50).  The Court also denied plaintiff's Motion to Re-Argue the Suppression Issue.  The Court entered a stay based on plaintiff's Motion to Stay.  (Doc. 50).  The Court then required the Government to file a status report or notice of disclosure by June 17, 2005.  (Id.).  The Government filed its status report, indicated that previous affidavits filed under seal could be disclosed and that recording of intercepted telephone calls and investigative reports would be provided to claimants in response to their discovery requests. (Doc. 52).  Plaintiff also asked that the stay be removed so that discovery could be provided and the Court could consider appropriate motions by the parties.  (Id.).  On June 20, 2005, the Court granted the Motion to unseal, removed the stay and ordered the Government to provide discovery to claimants.  The Court also indicated it would "entertain appropriate motions, based upon the release of discovery material described in plaintiff's Motion." (Doc. 53).  Plaintiff then responded to claimants' discovery demands.  (Docs. 54, 56).

Plaintiff filed a Motion to Amend Plaintiff's Statement of Facts and Second Motion for Summary Judgment.  (Doc. 59). Claimants have not opposed the Motion to Amend and it will be granted.  Therefore, plaintiff's Motion for Summary Judgment (Doc. 57) will be considered with claimants' Opposition.  (Doc. 61).

4

1   B.  SUMMARY JUDGMENT STANDARD

2       Summary judgment is appropriate when the movant shows "there

3   is no genuine issue as to any material fact and that the moving

4   party is entitled to judgment as a matter of law."   Rule 56(c),

5   F.R.Civ.P.; California Architectural Building Products, Inc. v.

6   Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987),

7   cert. denied, 484 U.S. 1006 (1988).  "Summary judgment will not

8   lie if the dispute about a material fact is 'genuine,' that is, if

9   the evidence is such that a reasonable jury could return a verdict

10  for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477

11  U.S. 242, 248 (1986).  The moving party bears the burden of

12  demonstrating that there is no material fact precluding summary

13  judgment.  Adickes v. S.H. Cress and Company, 398 U.S. 144, 157

14  (1970).

15      Substantive law determines which facts are material.

16  Anderson v. Liberty Lobby, 477 U.S. at 248; Jesinger v. Nevada

17  Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994).  "Only

18  disputes over facts that might affect the outcome of the suit

19  under the governing law will properly preclude the entry of

20  summary judgment."  Anderson, 477 U.S. at 248.

21      Summary judgment is appropriate against a party who "fails to

22  make a showing sufficient to establish the existence of an element

23  essential to that party's case, and on which that party will bear

24  the burden of proof at trial.  Celotex Corporation v. Catrett, 477

25  U.S. 317, 322 (1986); see also Citadel Holding Corporation v.

26  Roven, 26 F.2d 960, 964 (9th Cir. 1994).

27      Furthermore, the party opposing summary judgment "may not

28                                    5

rest upon the mere allegations or denials of the [party's]
pleadings, but . . . must set forth specific facts showing that
there is a genuine issue for trial."  Rule 56(e), F.R.Civ.P.;
Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith
Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Lind Rose Joint
Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  There is no genuine
issue for trial unless there is sufficient evidence favoring the
non-moving party.  If the evidence is merely colorable or if not
significantly probative, summary judgment may be granted.
Anderson, 477 U.S. at 249-50.  However, "the evidence of the non-
movant is to be believed and all justifiable inferences are to be
drawn in his favor."  Id. at 255.

        C. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

        Plaintiff moved for summary judgment arguing that untainted
evidence in the form of evidence obtained before the illegal
search, evidence of a Miami investigation and claimants' claim of
Fifth Amendment to requests for admissions (which plaintiff argues
should be deemed admissions) support the forfeiture of both
defendants.  (Docs. 57, 58).  Claimants oppose the Motion for
Summary Judgment by arguing (1) the Motion for Summary Judgment is
untimely and should not be considered, (2) the Miami information
should be barred as a violation of the disclosure deadline under
Rule 26, F.R.Civ.P., (3) the Miami information and the requests
for admissions should be barred as exploitations of the illegal
search, and (4) there is no untainted evidence to support the
Government's Motion for Summary Judgment.  (Docs. 60, 61).
Claimants did not file an opposing statement of facts or

affidavits under Rule 56(e),F.R.Civ.P.  <u>See</u> LRCiv. 56.1(a).

  1.  <u>Timeliness of the Motion for Summary Judgment</u>

  Claimants argue this Motion for Summary Judgment is untimely as it is well beyond the deadline for filing dispositive motions. Because of the problems of responding to claimants' discovery requests, in light of an ongoing criminal investigation in Miami, this case was stayed by the Court.  When the Court lifted the stay, it indicated it would entertain appropriate motions based on the evidence obtained and disclosed in discovery.  (Doc. 53).  It is not unusual for parallel civil and criminal proceedings to involve stays and disruption of the discovery process on both sides.  As a result of the stay and ongoing proceedings in Miami, discovery was disclosed late but with the Court's approval.  The Court can see no prejudice to the claimants as a result of the stay and the delay in the disclosure of the information from Miami.  The Motion for Summary Judgment will be considered.

  2.  <u>Use of the Miami Information</u>

  Claimants argue the Miami information should not be allowed as it is tainted by the illegal search.  Claimants argue that but for the illegal search, the authorities in Arizona would never have obtained information from Miami regarding claimant Camacho.

  In proceeding with this forfeiture, plaintiff may use evidence gathered after the filing of the Complaint to prove forfeiture.  18 U.S.C. § 983(c)(1)-(2).  In addition, the granting of a motion to suppress does not end a forfeiture proceeding.  The Government may proceed as long as it can prove the forfeiture through untainted evidence.  <u>United States v. Real Property Known</u>

as 22249 Dolorosa Street, 167 F.3d at 513.  If claimants' argument
were correct, the Government would never be able to use after-
acquired evidence in a forfeiture where the Court suppressed
evidence.

The Miami investigation began long before the authorities in
Arizona obtained the truck and money which are the subject of this
forfeiture.  The fact that the Miami investigation was proceeding
completely independent of the Arizona forfeiture led to the need
for the stay.  (Doc. 40).  If the Miami investigation had begun as
a result of this illegal search, claimants' argument would have
some force.  However, it is clear from plaintiff's Statement of
Facts and the information relied upon in that Statement of Facts,
the actual occurrences which are relied upon by the United States
to support its forfeiture occurred before the stop and illegal
search.  This information is clearly from an independent source
and is completely attenuated.  There is some information in the
affidavit of Chris Jacobson (Doc. 58, Ex. H at par. 3) which was
developed after the seizure.  However, this information will be
disregarded.

The Court finds the affidavits by cooperating individuals and
paragraphs 1, 2, 4-7 of Agent Jacobsen's affidavit are untainted
and may be considered in support of the Motion for Summary
Judgment.  (Doc. 58, Exs. G, H, and I).  The information provided
in affidavits of the cooperating individuals concerns events which
occurred and are corroborated as occurring prior to the illegal
search.  The fact that this information is set forth in affidavits
prepared after the illegal search does not mean that the

1    information must be disregarded as tainted by an illegal search.

2         Claimants also argue that even if the Court considers the

3    Miami information, it only raises genuine issues of material fact

4    which preclude summary judgment.  However, claimants have failed

5    to file anything to rebut the Statement of Facts and supporting

6    affidavits.

7         3.  <u>Plaintiff's Reliance on the Requests for Admissions</u>

8         Claimants argue the requests for admissions are also tainted

9    by the illegal search and cannot be considered by the Court.  In

10    fact, claimants argue that based on the Court's earlier

11    suppression ruling, nothing that occurred after the illegal search

12    can be considered by the Court.  Claimants do not cite any case in

13    support of this proposition but simply argue but for the illegal

14    search there would be no forfeiture.  As pointed out earlier, a

15    forfeiture may proceed after an illegal search and after-acquired

16    evidence may be used to support a forfeiture.  <u>United States v.</u>

17    <u>$191,910 In U.S. Currency</u>, 16 F.3d 1051, 1062-63 (9th Cir. 1994);

18    18 U.S.C. § 983(c)(2).  Given these two principles, claimants'

19    argument must fail.

20         4.  <u>Plaintiff's Burden of Proof and Evidence</u>

21         18 U.S.C. § 983(c) states:

22      (c) Burden of proof.--In a suit or action brought
        under any civil forfeiture statute for the civil

23         forfeiture of any property--

24         (1) the burden of proof is on the Government to
        establish, by a preponderance of the evidence, that the

25         property is subject to forfeiture;

26         (2) the Government may use evidence gathered after
        the filing of a complaint for forfeiture to establish,

27

28                                  9

1    by a preponderance of the evidence, that property is
     subject to forfeiture; and

2

3           (3) if the Government's theory of forfeiture is that
     the property was used to commit or facilitate the
     commission of a criminal offense, or was involved in the

4    commission of a criminal offense, the Government shall
     establish that there was a substantial connection

5    between the property and the offense.

6    If the Government is successful in establishing by a preponderance

7    of evidence that the property is subject to forfeiture, then

8    claimants must come forward and satisfy the requirement under 18

9    U.S.C. § 983(d), i.e. that they are innocent owners.

10          Plaintiff relies on three types of evidence to carry its

11   burden of proving the defendants are subject to forfeiture.

12   Plaintiff relies on evidence acquired prior to the illegal search,

13   evidence of the Miami, Florida investigation and the requests for

14   admissions sent by plaintiff to claimants and to which the

15   claimants took the Fifth Amendment.  Claimants argue plaintiff has

16   not carried its burden of proving by a preponderance of evidence

17   that the defendants are subject to forfeiture.  Claimants argue

18   there is no evidence before the Court.  The Court has already

19   ruled that evidence prior to the illegal search may be considered;

20   the Miami information is not tainted by the illegal search and

21   evidence obtained by plaintiff during discovery is not tainted.

22          Claimants argue the Court may not even acknowledge that one

23   of the defendants is money but rather must deal with the defendant

24   money as if it were a "widget."  (Doc. 60 at p. 14).  Claimants'

25   argument is based on United States v. $191,910 In U.S. Currency,

26   16 F.3d at 1062-1065.  In this case, the Court held that once the

27   Court grants a motion to suppress, ". . .illegally seized property

28                                  10

1   could not be introduced as evidence in a forfeiture proceeding:

2   Any evidence which is the product of an illegal search or seizure

3   must be excluded in the forfeiture hearing. . .We must hold that

4   the district court was correct in excluding the illegally seized

5   money." (Id. at 1063).  The Court's holding that the illegally

6   seized money may not be entered in evidence during a forfeiture

7   proceeding would obviously prevent plaintiff from bringing the

8   cash, which is the subject of this forfeiture, into court and

9   putting it in evidence.

10          However, the Court does not believe that exclusion of the

11  cash means the Court must consider the defendant cash as a

12  "widget."  The Court believes it can still take notice of the fact

13  that the defendant is cash.  This is obviously stated in the

14  caption of the case.  Perhaps the denominations making up the

15  amount and the actual money itself cannot be put into evidence.

16  However, there is no way for the Government to show that a

17  "widget" is the product of a drug transaction and, therefore, the

18  Court does not believe it has to disregard the fact that one of

19  the defendants is cash.  As to the truck, the Court knows from

20  untainted evidence prior to the seizure that it is a white Ford

21  truck, with dual rear wheels, with a Florida license plate,

22  registered to claimant Miguel Camacho who resides in Florida.  The

23  Court also knows from untainted evidence that claimant Bruno was

24  traveling south on I-17 outside of Phoenix with claimant Camacho

25  in the Ford truck.[2]

26  _____

27          [2]As explained below, from the uncontested Statement of Facts
    in support of the Motion for Summary Judgment, the Court has

28                                    11

1       The Court's task is to determine whether the untainted
2   evidence shows, by a preponderance of the evidence, that the
3   defendant currency is subject to forfeiture because it represents
4   money furnished or intended to be furnished by any person in
5   exchange for a controlled substance (21 U.S.C. § 881(a)(1)) or it
6   is subject to forfeiture as it was involved in a transaction or
7   attempted transaction in violation of 18 U.S.C. § 1956 or 1957.
8   (Doc. 1 at p. 1).  The Court must make a determination with regard
9   to the truck as to whether it was used or intended to be used to
10  transport and facilitate the transportation, sale, receipt,
11  possession or concealment of a controlled substance in violation
12  of 21 U.S.C. § 801, et seq.  (Doc. 1 at p. 2).

13      The Miami evidence, in the form of affidavits from associates
14  of claimant Camacho and a drug agent in Florida, is material,
15  relevant and uncontradicted by claimants.  A party opposing a
16  motion for summary judgment "may not rest upon the mere
17  allegations or denials of the party's pleadings, but. . .must set
18  forth specific facts showing that there is a genuine issue for
19  trial."  Rule 56(e), F.R.Civ.P.; Celotex, 477 U.S. at 342;
20  Matsushita v. Zenith Radio, 475 U.S. 574, 585-88 and Brinson v.
21  Lind Rose Joint Venture, 53 F.3d at 1049.  There is no issue for
22  trial unless there is sufficient evidence favoring the non-moving
23  party.  Because claimants have not submitted any disputed facts in
24  opposition to the Motion for Summary Judgment, the relevant and
25  admissible evidence from Florida is unrebutted.  A claimant cannot

26  _____

27  additional information about the defendants.

28                                  12

avoid his burden, in a forfeiture action, under Rule 56,
F.R.Civ.P., by invoking the Fifth Amendment.  <u>Baker v. United
States</u>, 722 F.2d 517 (9th Cir. 1983); <u>United States v. Certain
Real Property 566 Hendrickson Blvd.</u>, 986 F.2d 990, 995-6 (6th Cir.
1993).

The Miami evidence establishes that:

1.  An individual known as Jairo Hernandez, during 2002 and
2003, worked for a Columbian cocaine dealer by the name of Roberto
Guillo.  Roberto Guillo wanted to sell cocaine to claimant Miguel
Camacho in Miami, Florida.  At Mr. Guillo's direction, Jairo
Hernandez traveled to Miami, Florida and met with claimant Camacho
in June, 2002.  Mr. Hernandez was picked up at the airport by Mr.
Camacho driving a white, dual rear wheeled pickup truck.  Mr.
Jairo Hernandez was taken to claimant Camacho's house where he saw
cocaine and a hidden storage facility large enough to accommodate
1000 kilograms of cocaine.  During this visit, claimant Camacho
told Mr. Hernandez he was in the business of selling cocaine and
sold approximately 1000 kilograms of cocaine in the Miami area
every 15-20 days.  The two negotiated for the purchase of cocaine
from Mr. Guillo but Mr. Camacho thought the price was too high.
(Doc. 58 at Exs. G, H).

2.  Mr. Jairo Hernandez met with claimant Camacho at his home
in Miami, Florida again in May or July, 2003.  At that time,
claimant Camacho told Mr. Hernandez that his cocaine business was
doing well and he was transporting cocaine from Mexico to Miami.
While at claimant Camacho's house, Mr. Hernandez met claimant
Bruno.  Claimant Bruno was introduced to Mr. Hernandez as the

1  husband of claimant Camacho's niece.   Mr. Hernandez did not know

2  the name of the husband of the niece.   (Doc. 58 at Exs. G, H).

3      3.   Leonardo Maya-Martinez, Sr. was introduced to claimant

4  Camacho in approximately March, 2002 by cocaine dealer Alfredo

5  Navarro.   Claimant Camacho visited Mr. Maya-Martinez' home in

6  Miami, Florida for the purpose of discussing the importation of

7  cocaine from Columbia to the United States for sale.   Mr. Maya-

8  Martinez met with claimant Camacho three to five times.   The last

9  meeting was in approximately February or March of 2003.   During

10 these meetings, claimant Camacho told Mr. Maya-Martinez he is in

11 the business of selling cocaine and his source is in Columbia.

12 Claimant Camacho stated the cocaine was transported through Mexico

13 and into the United States where it was sold in Florida and New

14 York.   Although Mr. Maya-Martinez and claimant Camacho agreed on a

15 price of $16,000.00 per kilogram for cocaine delivered to Miami,

16 claimant Camacho never delivered any cocaine to Maya-Martinez.

17 Claimant Camacho told Mr. Maya-Martinez he imports 2,000-3,000

18 kilograms of cocaine every three months and the cocaine is stored

19 on a ranch near the United States/Mexico border.   Claimant Camacho

20 told Mr. Maya-Martinez he utilizes several types of vehicles to

21 transport his drugs and currency.   Claimant Camacho told Mr. Maya-

22 Martinez that he personally drives large amounts of cash to Mexico

23 to make payments to the transportation organizations.   (Emphasis

24 added). (Doc. 58 at Ex. I).

25     4.   The Ford F-350 truck which is the subject of this

26 forfeiture action was seen by drug agents while they were

27 conducting surveillance in the Miami, Florida case.   Both Jairo

28                                14

Hernandez and Leonardo Maya-Martinez, Sr. were charged, arrested and plead guilty to drug charges arising from the investigation in Miami, Florida.  They provided the affidavits in this case as part of a cooperation agreement in Miami, Florida.

      5.  <u>The Requests for Admissions</u>

The requests for admissions sent to claimants Bruno and Camacho are set forth in plaintiff's Amended Statement of Facts at paragraphs 65-76.  (Doc. 58 at pp. 11 and 12).  Claimants decided to invoke their Fifth Amendment privilege and not respond to these discovery requests.  (Doc. 58 at Ex. B).

Plaintiff argues the requests for admissions may be considered in determining whether the Government has carried its burden of proof.  The requests for admissions to claimant Camacho asked him to admit (1) he concealed or caused to be concealed the money in the Ford truck, (2) he altered the defendant Ford truck so drugs and cash could be concealed in one of the two fuel tanks, (3) the defendant Ford truck was used in drug trafficking, (4) the defendant money is his, (5) he knew the money was concealed in the defendant truck on June 3, 2003 and (6) he knew the money was to be used to acquire controlled substances.

The requests for admissions to claimant Bruno asked him to admit (1) he concealed or caused the money to be concealed in the defendant truck, (2) the money was to be used to purchase controlled substances or was the proceeds from the sale of controlled substances, (3) the money was acquired by claimant Camacho and (4) claimant Camacho acquired the funds from the "illegal exchange of controlled substances."

15

1        As pointed out above, both claimants asserted the Fifth

2   Amendment to all discovery requests by plaintiff.  A blanket

3   assertion of the Fifth Amendment is no defense to a forfeiture.

4   <u>United States v. Certain Real Property</u>, 986 F.2d at 996.

5   Plaintiff now asks the Court to determine the sufficiency of

6   claimants' blanket invocation of the Fifth Amendment in response

7   to the requests for admissions.  Rule 36(a), F.R.Civ.P.  The Court

8   cannot conclude that invoking the Fifth Amendment as to all of the

9   requests for admissions is proper.  Clearly some of the requests

10  could provide a link to proof of criminal activity but some of the

11  requests are not facially incriminating.  This is the problem with

12  a claimant's blanket invocation of the Fifth Amendment.  For

13  example, claimant Bruno filed a claim to the money.  However, he

14  took the Fifth Amendment rather than deny the money was Camacho's.

15  The Court finds the blanket invocation of the Fifth Amendment is

16  an insufficient response under Rule 36, F.R.Civ.P., and the

17  requests for admissions must be deemed admitted.[3]

18       Further, even if the Court were to find the blanket Fifth

19  Amendment assertion proper under Rule 36, F.R.Civ.P., and the

20  requests not deemed admitted, the Court may draw a negative

21  inference from the invocation of the Fifth Amendment in this civil

22  proceeding.  <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 318-20 (1976);

23  <u>United States v. Rylander</u>, 460 U.S. 752, 758 (1983); <u>LiButti v.</u>

24  _____

25       [3]In addition, by not submitting any evidence in opposition to
    plaintiff's Statement of Facts and the Court finding those
26  statements supported by evidence, claimants have failed to raise a
    genuine issue of material fact as to those assertions found in
27  claimants' Statement of Facts.

28                                  16

1  United States, 107 F.3d 110, 121-125 (2nd Cir. 1997); United
2  States v. Stelmokas, 100 F.3d 302, 310-311 (3rd Cir. 1996), cert.
3  denied, 520 U.S. 1242 (1999); Brink's, Inc. v. City of New York,
4  717 F.2d 700 (2nd Cir. 1983); United States v. A Single Family
5  Residence and Real Property Located at 900 Rio Vista Blvd., 803
6  F.2d 625, 629 at n.4 (11th Cir. 1986).

7      Some courts have held the negative inference cannot be the
8  sole basis for ruling against the party invoking the privilege.
9  Butler v. Oak Creek-Franklin School District, 172 F.Supp.2d 1102,
10 1126 (E.D.Wisc. 2001); Kontos v. Kontos, 968 F.Supp. 400, 408
11 (S.D.Ind. 997).  Many courts have held the negative inference
12 applies to those matters on which the party invoking the privilege
13 has the burden of proof/production.  SEC v. Navin, 97 F.3d 1460
14 (9th Cir. 1996) (unpublished opinion); United States v. All Assets
15 and Equipment of Westside Building Corp., 843 F.Supp. 377
16 (N.D.Ill. 1994); United States v. One 1985 Plymouth Colt, 644
17 F.Supp. 1546 (N.D.Ill. 1986).

18     In this forfeiture, plaintiff has produced untainted,
19 uncontested evidence which proves by a preponderance of the
20 evidence a substantial connection between the defendants and
21 cocaine purchases and sales, i.e. that the defendant money is
22 proceeds of cocaine sales and/or intended to be furnished to buy
23 additional cocaine and that the defendant Ford truck was used and
24 intended to be used to transport cocaine and money derived from
25 cocaine sales.  21 U.S.C. § 881(a)(4) and (6).  In short,
26 plaintiff has carried its burden even without considering the
27 requests for admissions.  The Court comes to this conclusion based

28                                17

on the untainted evidence obtained prior to the illegal search and the information specifically referenced above regarding the Miami investigation (i.e. affidavits of two drug dealers and portions of the affidavit of the drug agent).

Since plaintiff has fulfilled its burden of proof, claimants have the burden of producing evidence that they are "innocent owners."  Claimants have not produced any evidence that they are "innocent owners."  In addition, the negative inference which may be drawn from invoking the Fifth Amendment precludes such a finding.  Baxter v. Palmigiano, 425 U.S. at 318-20; United States v. Rylander, 460 U.S. at 758; United States v. A Single Family Residence, 803 F.2d at 629 n. 4; United States v. Stelmokas, 100 F.3d at 310-311; LiButti v. United States, 107 F.3d at 121-125; United States v. All Assets and Equipment, 843 F.Supp. at 377; United States v. One 1985 Plymouth Colt, 644 F. Supp. at 1546.

Because plaintiff has come forward with untainted and uncontested evidence to prove by a preponderance of the evidence that the defendants are subject to forfeiture and claimants have come forward with no evidence they are innocent owners, there is no genuine issue of material fact and plaintiff is entitled to judgment as a matter of law.

**IT IS THEREFORE ORDERED** granting plaintiff's uncontested Motion to Supplement or Amend Plaintiff's Statement of Facts and Second Motion for Summary Judgment.  (Doc. 59).

**IT IS FURTHER ORDERED** granting plaintiff's Second Motion for Summary Judgment.  (Doc. 57).  The defendants are forfeited to the United States.

1    **IT IS FURTHER ORDERED** that the Clerk shall enter judgment for

2  plaintiff.

3    DATED this 23rd day of January, 2006.

4

5    *Virginia A. Mathis*

Virginia A. Mathis
United States Magistrate Judge

19